AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

United States of America )
v. )
Maciel BELMIRO (Defendant #1) )
Chellima RIBEIRO-Silva (Defendant #2) ) CASE NUMBER: EP:19-M -08729
)
)
_____ )
*Defendant(s)*

FILED
2019 OCT -2  AM 10: 49
CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   09/28/2019   in the county of   El Paso   in the
Western District of   Texas  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 | Two or more persons conspire to commit any offense against the United States, to defraud the United States, or any agency, in any manner or for any purpose. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James Haines, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   10/02/2019

_____
*Judge's signature*

City and state:   El Paso, Texas     Leon Schydlower, U.S. Magistrate Judge
*Printed name and title*

Oath Telephonically Sworn
At  11 :56  AM
Fed.R.Crim.P. 4.1(b)(2)(A)

AFFIDAVIT

On September 28, 2019, Maciel BELMIRO, from now on referred to as defendant #1, a citizen and national of Brazil, was apprehended by United States Border Patrol (USBP) as he illegally entered the United States approximately 1.46 miles west of the Paso Del Norte Port of Entry, located in El Paso, Texas, in the Western District of Texas. Defendant #1 was accompanied by a female, later identified as Chellima RIBEIRO-SILVA, from now on referred to as defendant #2, also a citizen and national of Brazil. The defendants were accompanied by an infant, DOB: XX/XX/2019 and claimed to be a family unit. The place where the defendants entered has not been designated as a port of entry by immigration officials and therefore, they were transported to the Border Patrol Station for further processing.

At the USBP station defendant # 1 and defendant # 2 presented USBP Agents with their legitimate Brazilian passports and presented an authentic Brazilian passport on behalf of the infant, which listed both of their names as parents. It was later determined through interviews with defendant #1 and #2 that the passport presented on behalf of infant was obtained through fraud in order for USBP to release them into the United States.

On September 29, 2019, Homeland Security Investigations (HSI) Special Agent (SA) Haines, HSI SA Escobari and USBP Agent Morales interviewed defendant # 1 and defendant # 2 separately and on two separate occasions. These interviews were conducted in Portuguese, interpreted by Lionbridge language service interpreters.

Both defendants were advised of their Miranda rights verbally and in writing and agreed to answer questions without an attorney present. Both defendants were also advised verbally and in writing of the potential consequences of making false statements and presenting false information to federal law enforcement officers under Title 18 USC 1001. Both defendants stated that they understood these advisements.

Post Miranda interviews revealed defendant # 1 and defendant #2 conspired a plan to pose as a family with the infant.

During questioning, defendant # 1 stated to agents he was not the infant's biological father. Further, defendant # 1 stated that he has no relationship with defendant # 2, whom he originally claimed was his wife. Defendant # 1 stated he and defendant # 2 were put together by a smuggler they both hired in Brazil. According to defendant # 1, the smuggler charged them $10,000 USD for smuggling fees. Defendant # 1 also stated he was required to pay $1,000 USD as a down payment for the smuggling fees. Defendant # 1 further stated that he previously knew the father of defendant # 2.

Defendant # 1 stated that he met with defendant # 2, along with some of her family members, a smuggler named "Ruben" and the infant at defendant # 2's house in Brazil on the day they left for the U.S. Defendant # 1 also stated that Ruben gave instructions to cross into the U.S. in front him and the entire family of defendant # 2. Defendant # 1 then stated that he understood that the biological mother of the infant would be staying back in Mexico as he crossed the border and then

would pick up infant in the U.S the following day. Defendant # 1 stated he was going to continue paying his smuggler after he find work in the U.S. Defendant # 1 told agents he did not know where the mother of infant was currently located. Defendant # 1 stated that he was unemployed and needed to come to the U.S. Defendant # 1 stated defendant # 2 gave him the passport for infant to carry.

Defendant # 2 was questioned regarding her relationship to defendant #1 and the infant. Defendant #2 claimed the infant was not the son of defendant #1, with whom she claimed to live with. Defendant # 2 then claimed she had adopted the infant and her parents might have documents to prove her claim. Defendant # 2 further claimed her parents were in the United States because they had been released by USBP the day before. After reviewing the 18 USC 1001 warning a second time, defendant # 2 admitted she was not the mother of the infant and identified the infant's mother as "Pamela." Defendant # 2 also stated defendant # 1 knew about the scheme to cross the border and enter the U.S. Defendant # 2 stated that she was not married to defendant # 1 as originally stated to USBP and "Ruben" put them together to travel to the United States. Defendant # 2 admitted she entered the United States by claiming to be a family unit because she believed she had a better chance of entering.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

## CRIMINAL AND IMMIGRATION HISTORY

Defendant #1 and defendant #2 do not have a previous criminal or immigration history.